UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLSCRIPTS HEALTHCARE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 5754 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ETRANSMEDIA TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Allscripts Healthcare, LLC brought this state law suit against Etransmedia Technology, Inc. under the diversity jurisdiction. Docs. 1, 23. Etransmedia has moved to stay the suit and compel arbitration pursuant to §§ 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. Doc. 27. The motion is granted, but with the understanding that Allscripts can revive proceedings before this court if the arbitrators conclude that its claims are not arbitrable.

**Background**

On a motion to compel arbitration, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (internal quotation marks omitted).

Allscripts produces software that helps physicians, medical practices, and hospitals keep electronic medical records and manage their practices. Doc. 23 at ¶¶ 2, 12. Mysis Healthcare Systems did the same until it merged with Allscripts in October 2008. Doc. 28-1 at ¶ 13; Doc. 33-1; Doc. 54 at 8. Allscripts's main software product is called "Allscripts Professional," while Mysis sold software products called "Mysis MyWay," "Mysis Tiger," "Mysis Vision," and "Mysis EMR." Doc. 23 at ¶¶ 5, 12; Doc. 40 at 2.

1

In April 2008, prior to the Mysis-Allscripts merger, Mysis and Etransmedia entered into a "Partner Agreement" in which Etransmedia promised to buy licenses for Mysis's software and resell them to health care providers. Doc. 23 at ¶ 18; Doc. 33-1; Doc. 54 at 7-8. The agreement provided that it would last for five years, after which it would renew automatically each year unless either party decided to terminate it. Doc. 33-1 at 6, § 17(a). Section 19(d) of the agreement is an arbitration provision:

> In case of any and all disputes in connection with the negotiation, execution, interpretation, performance or non-performance of this Agreement … the dispute shall be determined by binding and final arbitration in Raleigh, North Carolina, by three (3) arbitrators selected by the Parties (or by the American Arbitration Association if the parties cannot agree) in accordance with the law of the state of North Carolina and the rules of the American Arbitration Association.

Doc. 33-1 at 7, § 19(d). Allscripts does not dispute that it became a party to the Partner Agreement when it merged with Mysis. Doc. 23 at ¶ 20; Doc. 40 at 2.

Allscripts terminated the Partner Agreement in April 2014, but it remained entangled with Etransmedia through mutual customers—health care providers who used Allscripts's software to manage their practices but who stored their data on Etransmedia's servers—which proved to be a problem for Allscripts. Doc. 23 at ¶ 3. When some of those mutual customers tried to upgrade from Mysis MyWay to Allscripts Professional, Etransmedia informed them that it could not migrate their data to Professional, but that it could migrate their data to similar software products made by Allscripts's competitors. *Id*. at ¶¶ 6, 25-37. Etransmedia also told Allscripts's customers that Allscripts was obligated to provide them with customer support and upgrades. *Id*. at ¶¶ 38-45. Beginning in July 2014, Etransmedia proposed to pay Allscripts to provide additional software and services to Etransmedia's clients. Allscripts accepted the proposal and provided the software and services, but Etransmedia refused to pay. *Id*. at ¶¶ 46-50.

In May 2015, Etransmedia filed claims against Allscripts before the American Arbitration Association ("AAA"). Doc. 28 at 6; Doc. 33-18. (It was the parties' second round of arbitration. They arbitrated related disputes in 2014, and Etransmedia won a several million dollar award. Doc. 23 at ¶ 4.) Shortly thereafter, Allscripts responded by filing suits against Etransmedia in Illinois and North Carolina state courts. Doc. 28 at 6. Etransmedia removed the Illinois suit to this court in June 2015.

In September 2015, Allscripts and Etransmedia submitted their disputes to mediation. *Id*. at ¶ 58. At the end of the mediation, the two firms signed a "Term Sheet" under which Etransmedia promised to release its clients' data to Allscripts in exchange for a substantial payment, after which the parties would dismiss their claims against each other and unwind their relationship as far as possible. *Id*. at ¶¶ 59-60. Allscripts and Etransmedia left certain important terms open with the understanding that they would reach a more comprehensive agreement by October 1, 2015, but the Term Sheet required immediate action from both parties; Allscripts had to upgrade the software of Etransmedia's clients without charge, and Etransmedia had to provide Allscripts with documents to support certain representations and warranties. *Id*. at ¶¶ 64-67. Allscripts provided the software upgrades, but Etransmedia reneged on the bargain and refused to provide Allscripts with requested documents, tanking the negotiations over the comprehensive settlement agreement. *Id*. at ¶¶ 65-66, 68-72. Etransmedia never paid Allscripts for its clients' software upgrades. *Id*. at ¶ 73.

Allscripts filed an amended complaint in this suit in November 2015. Docs. 2, 23. The amended complaint alleges that Etransmedia breached its obligation to pay for the software and services that Allscripts provided to Etransmedia's customers; that Etransmedia was unjustly enriched by those services; that Etransmedia committed defamation when it told Allscripts's

3

customers that Allscripts had a duty to provide them with customer service and upgrades; that Etransmedia tortiously interfered with Allscripts's prospective economic advantage by refusing to facilitate customers in switching to Allscripts Professional; that Etransmedia breached the Term Sheet by refusing to provide documents supporting its representations and warranties; and that Etransmedia violated several state deceptive trade practices statutes. Doc. 23 at ¶¶ 75-115. Allscripts also requests a declaration that Etransmedia's claims against Allscripts in the pending AAA arbitration are baseless. *Id*. at ¶¶ 106-110.

## Discussion

As noted, Etransmedia has moved to stay this suit and compel arbitration before the AAA. Doc. 27. Section 2 of the FAA states, in relevant part:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 "mandates enforcement of valid, written arbitration agreements," *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002), and "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). "To give effect to the federal policy favoring private arbitration, the FAA provides for stays of litigation when an issue presented in the case is referable to arbitration." *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 3). "[B]ecause arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore*, 666 F.3d at 1032 (internal quotation marks omitted).

Courts "evaluate agreements to arbitrate under the same standards as any other contract," *Tinder*, 305 F.3d at 733, which include "all general principles of state law," *Green v. U.S. Cash*

4

*Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013). *See Gore*, 666 F.3d at 1032 ("[C]ourts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms.") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011); *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). When "determin[ing] whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation," but "[o]nce it is clear … that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032. Accordingly, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ibid*. (internal quotation marks omitted); *see also Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003) ("A trial to determine arbitrability is required … only if the issue that an evidentiary hearing would resolve is fairly contestable."). "[J]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735.

Allscripts does not dispute that the Partner Agreement's arbitration clause is a valid, written arbitration agreement or that it remains effective for at least some disputes between Allscripts and Etransmedia. Doc. 40 at 5-9; *see Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 251-52 (1977) (holding that arbitration agreements within expired contracts are still presumed to require the parties to arbitrate certain

5

disputes). Allscripts instead maintains that the arbitration clause does not extend to its claims against Etransmedia because the Partner Agreement never governed the Allscripts Professional product, and also because Allscripts's claims turn exclusively on events that occurred after the Partner Agreement's termination. Doc. 40 at 5-9. Etransmedia responds that it is up to the arbitrators, not the court, to interpret the arbitration clause's scope and determine whether it governs Allscripts's claims. Doc. 28 at 10-11.

As a general rule, courts and not arbitrators decide "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"); *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) ("Whether a particular dispute must be arbitrated is generally a question for judicial determination …."). But that is just a presumption; the Supreme Court has held that a "clear[] and unmistakabl[e]" agreement between the parties that the arbitrators will resolve disputes about arbitrability is as binding as any other arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 80 (2010); *see also id*. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.").

6

The Partnership Agreement's arbitration clause states that disputes within its scope must be resolved by a panel of the AAA "in accordance with … the rules of the [AAA]." Doc. 33-1 at 7. AAA Rule 7(a) states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to *the arbitrability of any claim or counterclaim*." AAA Commercial Rule 7(a) (emphasis added), available at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased (last visited May 26, 2016). As far as the court can tell, the Seventh Circuit has never decided whether an arbitration agreement's incorporation of the AAA's Rules qualifies as a "clear and unmistakable" agreement to arbitrate arbitrability. Six other circuits have directly addressed the question, though, with all concluding that such an incorporation qualifies as a clear and unmistakable delegation of arbitrability questions to the arbitrator. *See Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fadal Machining Cents., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *see also Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding that an agreement delegated questions of arbitrability to the arbitrator because it incorporated the International Chamber of Commerce Rules of Arbitration, which include a provision similar to AAA Rule 7(a)); *United States ex rel. Beauchamp & Shephard v. Academi Training Cent., Inc.*, 2013 WL 1332028, at *5 n.17 (E.D. Va. Mar. 29, 2013) (collecting cases); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, at *4-5 (N.D. Ill. Jan. 28, 2011); *but cf. Riley Mfg. Co. v. Anchor Glass*

*Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998) (holding that an arbitration agreement that incorporated the AAA's Rules did not delegate arbitrability questions to the arbitrator, but without discussing the incorporation).

The court adopts the consensus view. By incorporating the AAA's Rules, the Partnership Agreement's arbitration clause clearly and unmistakably delegates authority to the arbitrators to decide whether Allscripts's claims are arbitrable. Allscripts complains that this reasoning is "circular" because it "presumes the application of" the arbitration agreement. Doc. 40 at 6. But that elides the distinction between two different questions: first, whether disputes about the scope of the arbitration agreement must be arbitrated, and second, whether the substantive disputes between Allscripts and Etransmedia must be arbitrated. The court concludes that the answer to the first question is *yes*, which means that it is up to the arbitrators to answer the second question. Where is the circle? And anyway, the same objection would apply *whenever* a court compels arbitration of the question of arbitrability on the ground that the arbitration agreement requires it, even though precedent leaves no doubt that it is appropriate to do so in instances of a clear and unmistakable delegation of arbitrability questions to the arbitrator. *See Local 744, Int'l Bhd. of Teamsters v. Hinckley & Schmitt, Inc.*, 76 F.3d 162, 165 (7th Cir. 1996) ("We do not mean to say that situations do not exist where it is proper for an arbitrator, and not a court, to decide whether a dispute is arbitrable. The Supreme Court has expressly recognized that parties may agree to 'arbitrate the arbitrability issue.'") (quoting *AT&T Techs.*, 475 U.S. at 648).

Allscripts also argues that this case is different because the Partnership Agreement's arbitration clause appears in an expired contract. Its position appears to be that only courts may resolve disputes about the scope of an arbitration agreement in an expired contract, even if the agreement clearly and unmistakably delegates authority over arbitrability questions to an

8

arbitrator. Doc. 40 at 6. To support that view, Allscripts cites *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601 (7th Cir. 2002), and *Litton Financial Printing Division v. N.L.R.B.*, 501 U.S. 190 (1991). But those decisions address *how* to decide arbitrability, rather than *who* should decide it. As noted, if parties are subject to a valid arbitration agreement, a court ordinarily must presume that their dispute is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032; *see also AT&T Techs.*, 475 U.S. at 650. *Litton* and *Nissan* hold simply that, when the arbitration agreement appears in an expired contract, the presumption in favor of arbitrability does not apply. *See Litton*, 501 U.S. at 209 ("[W]e refuse to apply that presumption wholesale in the context of an expired bargaining agreement, for to do so would make limitless the contractual obligation to arbitrate."); *Nissan*, 307 F.3d at 604 ("[T]he presumption of arbitrability does not fully apply in cases where the arbitration agreement is contained in an *expired* fixed-term contract."). Neither decision holds that the court must disregard clear and unmistakable submissions of arbitrability questions to the arbitrator, and in fact the Seventh Circuit has suggested that courts may *not* disregard such submissions even when they are contained within expired contracts. *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 422 F.3d 522, 527 (7th Cir. 2005) ("The question here is how long the expired agreement to arbitrate survived. Only if the parties had agreed to allow the arbitrator to decide that threshold question would the district court have been compelled to order arbitration.").

In fairness, *Litton* makes some tangential noises about the "who" as well as the "how" of deciding arbitrability. The opinion addresses a suggestion that the Supreme Court "err[ed] in reaching the merits of the issue whether the post-termination grievances arise under the expired

9

agreement because … that is an issue of contract interpretation to be submitted to an arbitrator in the first instance." 501 U.S. at 208. The Court rejected that argument, but in so doing it relied only on the general principal that "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court"; the Court did not discuss what to do under circumstances where the parties have clearly and unmistakably agreed to arbitrate arbitrability. *Ibid*. *Litton* thus gives no reason to think that arbitration agreements in expired contracts represent an exception to the principle that courts should respect clear and unmistakable delegations of arbitrability questions to arbitrators. *See United Parcel Serv., Inc. v. Union de Tronquistas de Puerto Rico, Local 901*, 426 F.3d 470, 472 & n.2 (1st Cir. 2005) (citing *Litton* to hold that the district court should have determined whether a dispute was arbitrable under an arbitration agreement in an expired contract, but noting that a clear and unmistakable delegation of the question to the arbitrator would have changed the outcome).

Finally, it is important to distinguish *Miller v. Flume*, 139 F.3d 1130 (7th Cir. 1998). As in this case, the parties in *Miller* had agreed to arbitrate disputes according to the rules of a specific arbitral body—there, the National Association of Securities Dealers ("NASD"). *Id*. at 1132. The plaintiffs in *Miller* insisted that certain provisions in those rules showed that they and the defendants had clearly and unmistakably agreed that arbitrators would decide questions of arbitrability. *Id*. at 1133-34. The Seventh Circuit rejected the argument, though, and held that the district court should determine arbitrability.

*Miller* does not control this case because the NASD's rules, unlike the AAA's rules, did not clearly empower arbitrators to decide questions of arbitrability. The *Miller* plaintiffs relied on Part III, Section 35 of the NASD's rules, titled "Interpretation of Provisions of Code and Enforcement of Arbitrator Rulings," which read in relevant part:

10

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

*Id*. at 1134. In rejecting the contention that Section 35 clearly submits questions of arbitrability to the arbitrators, the Seventh Circuit noted that the provision "says nothing about arbitrability," and that "both interpretation and determinations about applicability are steps that take place after the threshold determination of arbitrability has occurred; or, at the very least, section 35 can reasonably be read that way." *Ibid*. By contrast, AAA Rule 7(a) expressly gives arbitrators the authority to decide "the arbitrability of any claim or counterclaim." That difference is significant, as is reflected in the fact that the Eleventh Circuit has held *both* that incorporation of the AAA's rules counts as a clear and unmistakable delegation of authority to the arbitrator to decide arbitrability *and* that incorporation of the NASD's rules does not. *Compare Terminix*, 432 F.3d at 1332 (AAA rules), *with Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 384 (11th Cir. 1995) ("We hold that section 35 [of the NASD's rules] is not 'clear and unmistakable evidence' of the parties' intent to allow the arbitrator to determine the timeliness of the claim.").

## Conclusion

For the foregoing reasons, Etransmedia's motion to stay this case and compel arbitration is granted. Allscripts must pursue its claims in arbitration before the AAA. This suit is stayed pending resolution of the arbitration. If the AAA arbitrators decide that Allscripts's claims are not arbitrable, the court will reopen these proceedings on Allscripts's motion.

May 27, 2016

United States District Judge